**Entered on Docket**
**February 09, 2010**
**GLORIA L. FRANKLIN, CLERK**
**U.S BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**



**The following constitutes**
**the order of the court. Signed February 09, 2010**

**Marilyn Morgan**
**U.S. Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

<div style="float:left">UNITED STATES BANKRUPTCY COURT<br>For The Northern District Of California</div>

| | |
|---|---|
| In re:<br><br>RAMON VALLEJO and ANA M. VALLEJO,<br><br>       Debtors. | Case No. 08-56732-MM<br><br>Chapter 13<br><br>**MEMORANDUM DECISION AND ORDER ON DEBTORS' MOTION TO AVOID LIEN AND VALUE COLLATERAL** |

## INTRODUCTION

Before the court is the debtors' motion to value their residence and to avoid the second deed of trust of JPMorgan Chase Bank, N.A., successor in interest to Washington Mutual Bank, F.A. At issue is whether any equity is available to partially secure the second deed of trust, which would bring into play the anti-modification protection of Bankruptcy Code § 1322(b)(2). The parties dispute the fair market value of the debtors' residence. Because there appears to be insufficient equity in the residence to even partially secure the junior lien, the lien is wholly unsecured and is valued at zero pursuant to Bankruptcy Code § 506(a). The result is that the second deed of trust of JPMorgan Chase Bank may not be enforced and is void.

## FACTUAL BACKGROUND

Ramon Vallejo and Ana M. Vallejo filed a voluntary petition under chapter 13 on November 21,

1

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

1   2008.  They scheduled among their assets their residence at 1237 Circle Drive, Salinas, Monterey

2   County, California.  The subject property is located in east Salinas, a suburban neighborhood of single

3   family residences situated in close proximity to shopping, schools, employment opportunities and

4   services.  The debtors' property was originally constructed in 1946 and currently consists of four

5   bedrooms and two and one-half bathrooms in approximately 1,470 square feet of living space.  It is a

6   ranch-style design with ceramic tile flooring, central heating, a fireplace with a wood burning stove

7   insert, a front porch,  a covered patio in the rear, concrete walkways and rear and side fencing.  A

8   detached two-car garage has been converted to a non-conforming use as a two bedroom, one bathroom

9   living unit without the proper city permits.  The property also includes newer upgraded features, such

10  as double-paned, insulated windows, a composite shingle roof, a stucco exterior and new paint.  It is in

11  average condition for the neighborhood and is properly maintained.  The average sales price in the

12  neighborhood during the first two quarters of 2009 was $123,000.

13      The residence is encumbered by a first deed of trust securing an obligation to JPMorgan Chase

14  Bank in the amount of $128,253.97 as of the petition date.  JP Morgan Chase Bank also holds a second

15  deed of trust that secures an equity line with a maximum credit limit of $50,000, but the bank has made

16  advances to the debtors pursuant to three separate loan accounts totaling $146,676.53 as of the petition

17  date.  The Vallejos' proposed first amended plan provides that they will make payments directly to

18  JPMorgan Chase Bank on the obligation secured by the first deed of trust.  However, they have

19  proposed no payments on the obligations secured by the second deed of trust.  Instead, paragraph 8 of

20  the debtors' proposed plan provides:

21      [T]he "[d]ebtors will file a motion to avoid the liens of JPMorgan Chase (fdba of
        Washington Mutual Bank) regarding the second (acc# 1200), third (acc# 1420) and
22      fourth (acc# 4279) mortgage accounts.  The Trustee shall make disbursements to the
        creditors pursuant to section 2(d).

23

24  The proposed plan further provides in Section 2(d) that holders of unsecured claims will receive no

25  distribution.  The Vallejos listed the value of the residence as $120,000 in their amended schedules A

26  and D.  They filed this motion to avoid the second deed of trust as wholly unsecured, asserting that the

27  rights of JPMorgan Chase Bank may be modified by the plan pursuant to Bankruptcy Code § 1322(b).

28  JP Morgan Chase Bank has objected to confirmation of the debtors' proposed plan and to this motion,

MEMORANDUM DECISION AND ORDER ON MOTION TO AVOID LIEN
Case: 08-56732    Doc# 61    Filed: 02/09/10    Entered: 02/09/10 16:02:39    Page 2 of 10

1  responding that there is sufficient equity to secure a portion of the second deed of trust, so the Supreme

2  Court decision in Nobelman prohibits the stripping of its lien.

3  The Vallejos and JPMorgan Chase Bank dispute the fair market value of the residence. The

4  respective appraisers for the Vallejos and JPMorgan Chase Bank both used the sales comparison

5  approach but derived valuations that vary by only $18,000. JPMorgan Chase Bank submits that the fair

6  market value of the property is $138,000, so there is equity in excess of the first deed of trust in the

7  amount of $128,253.97. The court conducted an evidentiary hearing to determine the fair market value

8  of the property.

9  At trial, the debtors proffered the testimony of Gregg Scattini, a certified residential real estate

10  appraiser who became licensed in 2003 and received his certification in 2006. He specializes in

11  residential properties in north and east Salinas, Monterey Country, California, the area where the subject

12  property is located. He also owns five properties within half a mile of the subject property. Scattini has

13  completed approximately 2,000 appraisals in east Salinas over five years. As comparison properties for

14  his appraisal of the debtors' residence, he selected based on bedroom and bathroom count, age,

15  condition and location three actual sales that closed within sixty days of the effective date of his

16  appraisal, June 9, 2009. He also used two pending sales. Each of the comparison properties is located

17  within half a mile of the subject property. The sales prices of the comparison properties that represent

18  actual sales range from $118,000 to $132,000. The sales prices for the pending sales range from

19  $128,500 to $150,000.

20  Scattini applied an adjustment factor of 10% to the list prices of the pending sales because the

21  actual contract prices were not available to him. He also made adjustments of $10,000 per room for

22  bedroom count, $6,000 per room for bathroom count, $40 per square foot for variations in the gross

23  living area, $2,000 for central heating, $5,000 per stall for the garage and $2,000 per unit for a fireplace.

24  He did not attribute additional value for the covering over the rear patio or the wood burning stove insert

25  in the fireplace. Relying on standard appraisal practice, Scattini applied a cost of cure adjustment of

26  $2,500 to account for a conversion of the living space in the garage back to its intended, permitted use.

27  Based on these adjustments, he derived an estimate of $120,000 for the fair market value of the property.

28

3

1    Eugene Ulrich testified on behalf of JPMorgan Chase Bank.  Licensed since 2000 and certified

2    in 2006, he specializes in residential properties in Monterey and Santa Cruz counties and has completed

3    3,500 appraisals.  Ulrich selected five comparison properties within a one mile radius of the subject

4    property based on age, design, function, quality, condition, parcel size and location.  The comparison

5    properties are based on actual sales that closed between May 20, 2009 and July 14, 2009, all within

6    ninety days of the effective date of his appraisal, September 3, 2009.  The sales prices of the comparison

7    properties that Ulrich used range from $105,000 to $127,000.

8    In his appraisal, Ulrich made an adjustment of $5,000 per full bathroom and $3,500 per half

9    bathroom.  He did not make any adjustments for bedroom count but instead adjusted at $50 per square

10   foot for variations in the gross living area.  He noted more specifically that the central heating system

11   is based on gas floor distribution and made a downward adjustment of $3,500 if the comparison property

12   has a forced air system.  He also made adjustments of $10,000 per garage stall unit, $5,500 for a covered

13   patio, $3,500 for only the patio covering and $5,000 per fireplace unit.  Although Ulrich noted that the

14   garage had been converted to a non-conforming use without city permits, he did not make any

15   adjustments in his report but assumed a hypothetical two-car garage.  At trial, however, he testified that

16   Scattini's cost of cure adjustment of $2,500 is appropriate.

17

18                                    **LEGAL DISCUSSION**

19   By its terms, § 506(a) of the Bankruptcy Code bifurcates claims into distinct secured and

20   unsecured components.  It provides in pertinent part:

21       An allowed claim of a creditor secured by a lien on property in which the estate has an
         interest . . . is a secured claim to the extent of the value of such creditor's interest in the
22       estate's interest in such property . . . and is an unsecured claim to the extent that the
         value of such creditor's interest . . . is less than the amount of such allowed claim.

23

24   11 U.S.C. § 506(a).  The second sentence of § 506(a) provides guidance to bankruptcy courts in valuing

25   property subject to a lien.  In re Arnold and Baker Farms, 177 B.R. 648, 655 (B.A.P. 9th Cir. 1994),

26   aff'd, 85 F.3d 1415 (9th Cir. 1996), cert. denied, 519 U.S. 1054 (1997).  It states:

27       Such value shall be determined in light of the purpose of the valuation and of the
         proposed disposition or use of such property, and in conjunction with any hearing on
28       such disposition or use or on a plan affecting such creditor's interest.

4

**MEMORANDUM DECISION AND ORDER ON MOTION TO AVOID LIEN**

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

1   11 U.S.C. § 506(a). Bankruptcy Rule 3012 further provides that the court may determine the value of

2   a claim secured by a lien on property in which the estate has an interest on motion and after a hearing

3   on notice to the holder of the secured claim. FED. R. BANKR. P. 3012. Market value is defined as "'[t]he

4   most probable price which a property should bring in a competitive and open market under all

5   conditions requisite to a fair sale, the buyer and seller each acting prudently and knowledgeably and

6   assuming the price is not affected by undue stimulus.'" Arnold and Baker Farms, 177 B.R. at 657.

7   Courts determine value on a case by case basis, taking into account the purpose of the valuation. Id. at

8   656.

9           Section 1322(b)(2) of the Bankruptcy Code allows a chapter 13 plan to modify the rights of

10  creditors, including the holders of secured claims, other than a claim secured only by real property that

11  is the debtor's principal residence. This provision protects home mortgages from modification and the

12  general right in chapter 13 to restructure debts. In Nobelman v. American Savings Bank, the Supreme

13  Court held that § 1322(b)(2) prohibits the "strip off" of the unsecured portion of an undersecured claim

14  from a chapter 13 debtor's principal residence. Nobelman v. American Savings Bank, 508 U.S. 324,

15  331-32 (1993). However, it did not reach the issue whether a wholly unsecured homestead lien may be

16  "stripped off." The Ninth Circuit has joined the majority of courts in determining that § 1322(b)(2) does

17  not protect the rights of a holder of a totally unsecured junior mortgage on the debtor's residence against

18  modification under a plan, so the junior creditor's lien may be avoided. In re Zimmer, 313 F.3d 1220,

19  1226 (9th Cir. 2002). The reason that the anti-modification protection of § 1322(b)(2) is not available

20  to a wholly unsecured creditor is that, pursuant to § 506(a)'s bifurcation of claims, an unsecured

21  homestead lien does not constitute a secured claim. Id. at 1227. See also In re Lam, 211 B.R. 36, 40-41

22  (B.A.P. 9th Cir. 1997), appeal dism'd, 192 F.3d 1309 (9th Cir. 1999). Consequently, a homestead lien

23  that is entirely unsecured may be "stripped off" or avoided in chapter 13. Id.

24          The dispositive issue in this case is whether there is sufficient equity to secure in part the junior

25  trust deed of JPMorgan Chase Bank or whether that lien is wholly unsecured. If some equity is

26  available to secure the junior lien, then the rights that JPMorgan Chase Bank possesses as the holder of

27  a claim secured by a homestead lien would be entitled to the anti-modification protection of §

28  1322(b)(2). Nobelman, 508 U.S. at 328- 30. Otherwise, its junior lien may be avoided. Whether the

5

1 claim of JPMorgan Chase Bank is secured depends on the valuation of the debtors' property. <u>See</u>

2 <u>Zimmer</u>, 313 F.3d at 1223. The appropriate date to determine valuation for lien stripping purposes is

3 the petition date. <u>In re Dean</u>, 319 B.R. 474, 479 (Bankr. E.D. Va. 2004); <u>In re Aubain</u>, 296 B.R. 624,

4 637 (Bankr. E.D.N.Y. 2003); <u>In re Edwards</u>, 245 B.R. 917, 919 (Bankr. S.D. Ga. 2000).

5        Both appraisers are well qualified as experts on the valuation of residential real properties, and

6 the court ascribed considerable weight to both appraisals offered at trial in determining the fair market

7 value of the property. Scattini and Urich applied different adjustment factors to some of the features

8 of the comparison properties to account for variations from the subject property. Scattini adjusted for

9 bedroom count at $10,000 per room as well as for gross living area at $40 per square foot. Ulrich

10 testified that he did not consider it defensible or valuable to adjust for bedroom count when variations

11 were taken into account by adjusting for the gross living area at $50 per square foot. His testimony is

12 persuasive, and the court will adopt Ulrich's approach and the adjustment factor of $50 per square foot

13 for variations in the gross living area. The court will also adopt Ulrich's adjustment of $5,000 per full

14 bathroom but use the adjustment Scattini adopted, $3,000 rather than $3,500, for each half bathroom.

15 This adjustment more accurately reflects fair market value. The court will further adopt as appropriate

16 Ulrich's $3,500 adjustment to account for improvements to the central heating system. A forced warm

17 air system is more efficient than the older gas floor distribution system that appears to be in the subject

18 property.

19        Scattini's adjustment factor of $5,000 per garage stall unit more accurately reflects value than

20 the $10,000 adjustment factor that Ulrich used. Such a large adjustment factor overstates the value of

21 a garage stall to the aggregate value of a residential property. Scattini made no adjustments for the

22 covering over the rear patio. However, Ulrich's adjustment factors of $5,500 for a covered patio and

23 $3,500 for the covering alone appear to be excessive. More appropriate adjustment factors would be

24 $3,500 for a covered patio and $2,000 for the covering alone.

25        Scattini used an adjustment factor of $2,000 per fireplace unit. He testified that he believes that

26 Ulrich's $5,000 adjustment is excessive. However, Ulrich explained at trial that the adjustment was

27 supportable because the subject property has a wood burning stove insert in the fireplace. The court

28 finds that a $5,000 adjustment is appropriate in light of the enhanced value the particular feature adds.

6

**MEMORANDUM DECISION AND ORDER ON MOTION TO AVOID LIEN**

A wood burning stove insert is an attractive upgraded feature, as is evidenced by the photograph of the fireplace in both appraisals, conserves heat and increases energy efficiency. Lastly, Ulrich agreed at trial that a cost to cure adjustment of $2,500 or more is appropriate to convert the unpermitted living unit back to its intended, conforming use as a detached two-car garage. For purposes of this analysis, the court will use a cost of cure adjustment of only $2,500.

There is a discrepancy between the two appraisals with respect to the square footage of the debtors' property. The Scattini appraisal indicates that the property consists of 1,476 square feet of gross living area. The Ulrich appraisal reflects that the subject property is 1,467 square feet. For purposes of this analysis, the court will use 1,470 square feet as the baseline against which to measure the comparison properties. The court will also omit from this analysis the two pending sales that Scattini used in his appraisal because adjustments to pending sales are simply too speculative. As Scattini testified at trial, the actual contract prices for the properties subject to pending sales were unavailable to him. Moreover, it is unnecessary to rely on pending sales where the remaining eight comparison properties that were used in both appraisals provide a sufficient basis from which to derive a valuation of the subject property.

The petition date, November 21, 2008 in this case, is the proper date to determine value for lien stripping purposes. Dean, 319 B.R. at 479; Aubain, 296 B.R. at 637; Edwards, 245 B.R. at 919. However, there is no direct evidence of the value of the debtors' residence as of the petition date. The effective date of the Scattini appraisal is June 9, 2009, and the effective date of the Ulrich appraisal is September 3, 2009. In a proceeding to determine secured status under § 506, the secured creditor bears the ultimate burden of persuasion as to both the extent of its lien and the value of the collateral securing its claim. In re Covenant at South Hills, Inc., 410 B.R. 426, 430 (Bankr. W.D. Pa. 2009); In re Sneijder, 407 B.R. 46, 55 (Bankr. S.D. N.Y. 2009); In re Fassinger, 246 B.R. 513, 520 (Bankr. W.D. Pa. 2000). JP Morgan Chase Bank has not proffered evidence of the value of the property as of any date other than the effective date of its appraisal. On these facts, the court must infer the value of the property as of the petition date based on the evidence that is available.

The court has applied the adjustment factors indicated herein to the sales prices of the eight comparison properties identified in the two appraisals to account for variations in the following features:

MEMORANDUM DECISION AND ORDER ON MOTION TO AVOID LIEN
Case: 08-56732   Doc# 61   Filed: 02/09/10   Entered: 02/09/10 16:02:39   Page 7 of 10

bathroom count, gross living area, heating distribution system, garage, covered patio, fireplace and cost to cure. Having made these adjustments, the court has derived adjusted sales prices for the comparison properties ranging from $106,150 to $141,050. Based on this analysis, the court finds that the fair market value of the property as of the petition date is $125,500.

<div align="center">

**CONCLUSION**

</div>

The valuation of the debtors' residence at $125,500 indicates that there is insufficient equity to fully secure the first deed of trust in the amount of $128,253.97. As a result, no equity is available to even partially secure the second deed of trust of JPMorgan Chase Bank. Since the second deed of trust is wholly unsecured, the claim does not constitute a secured claim, and the lien is not entitled to the protections of the anti-modification provision of § 1322(b)(2). For these reasons, the debtors' motion is granted as follows:

1. For purposes of the debtor's chapter 13 plan, the junior lien of JPMorgan Chase Bank is valued at zero, JPMorgan Chase Bank does not have a secured claim based on its second deed of trust, and the lien may not be enforced pursuant to §§ 506, 1322(b)(2) and 1327.

2. This order shall become part of the debtors' confirmed chapter 13 plan.

3. Upon entry of a discharge in the debtors' chapter 13 case, the lien shall be voided for all purposes, and upon application by the debtors, the court will enter an appropriate form of judgment voiding the lien.

4. If the debtors' chapter 13 case is dismissed or converted to one under another chapter before the debtors obtain a discharge, this order shall cease to be effective and the lien shall be retained to the extent recognized by applicable nonbankruptcy law, and upon application by the lienholder, the court will enter an appropriate form of order restoring the lien.

5. Except as provided by separate, subsequent order of this court, the lien may not be enforced so long as this order remains in effect.

**MEMORANDUM DECISION AND ORDER ON MOTION TO AVOID LIEN**

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

6.  The debtors' plan is restored to the court's calendar on **February 19, 2010** at 10:00 a.m. for

a prehearing conference on objection to confirmation.

Good cause appearing, IT IS SO ORDERED.

**\* \* \* END OF ORDER \* \* \***

**UNITED STATES BANKRUPTCY COURT**
**For The Northern District Of California**

9

**MEMORANDUM DECISION AND ORDER ON MOTION TO AVOID LIEN**

**SERVICE LIST**

T KEVIN DOUGHERTY
DOUGHERTY LAW OFFICES
601 S MAIN ST
SALINAS CA 93901

WILLIAM G MALCOLM
KERRY MOYNIHAN
MALCOLM CISNEROS
2112 BUSINESS CENTER DR 2ND FLOOR
IRVINE CA 92612

DEVIN DERHAM-BURK
OFFICE OF THE CHAPTER 13 TRUSTEE
PO BOX 50013
SAN JOSE CA 95150-0013

**UNITED STATES BANKRUPTCY COURT**
**For The Northern District Of California**

10

**MEMORANDUM DECISION AND ORDER ON MOTION TO AVOID LIEN**